FILED

2024 Oct-30  AM 08:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **Clifford Toney** | Case No.: |
| Plaintiff, | |
| v. | |
| **QCHC, Inc.** | **PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.** |
| **Johnny Bates** | |
| Defendants. | |

## COMPLAINT

Comes now, Plaintiff, Clifford Toney (hereinafter "Mr. Toney"), by and through undersigned counsel, and for his Complaint against Defendants QCHC, Inc. and Johnny Bates (hereinafter, collectively, the "Defendants") alleges and states the following:

### NATURE OF THE CASE

1. This Complaint states causes of action under theories of medical negligence and deliberate indifference.

2. Plaintiff Clifford Toney is a diabetic. On February 26, 2024, he was booked into Morgan County Jail.

1

3. At the time of his booking into Morgan County Jail, he asked for diabetic shoes, but he was not provided with the requested diabetic shoes.

4. It was at that time, that he was provided with "sliders" (slipper/sandal), that caused a blister to his right great toe within a few days after he was booked into Morgan County Jail.

5. Under the care of the Defendants, Mr. Toney's blister was neglected, became severely infected, required multiple trips to the hospital, and ultimately led to the amputation of his great right toe and great right toe joint on July 3, 2024.

## PARTIES, JURISDICTION, AND VENUE

6. Plaintiff Clifford Toney is an adult resident of Madison County, Alabama and is over the age of nineteen (19).

7. Defendant QCHC, Inc. is a Domestic Corporation and conducts business within the state of Alabama.

8. Defendant Johnny Bates, MD (hereinafter "Dr. Bates"), is, upon information and belief, a resident of Shelby County, Alabama and was one of the physicians employed by Morgan County Jail treating Mr. Toney's diabetic foot ulcer. Dr. Bates is licensed to practice medicine in Alabama. Upon information and belief, during the time relevant to this action, Dr. Bates served as the principal physician responsible for Mr. Toney's health care while he was incarcerated at Morgan County Jail, and he was a physician-employee and/or a physician-owner of QCHC, Inc. QCHC, Inc. is vicariously liable for the actions and inactions of Dr. Bates under the doctrine of *respondeat superior*.

9. Venue is proper in the United States District Court for the Northern Division of Alabama under the Alabama Medical Liability Act via 28 U.S.C. § 1367 and the Eighth Amendment of the United States Constitution.

**ALLEGATIONS**

10. Mr. Toney is a 54-year-old male, with diagnoses including, but not limited to, diabetes mellitus type 2, chronic anemia and diabetic peripheral neuropathy.

11. On February 26, 2024, Mr. Toney was booked into Morgan County Jail. It was at this time, that he was provided with "sliders" (slipper/sandal), that caused a blister to his right foot.

12. Mr. Toney complained of the blister to the Defendants, but his request for medical attention was ignored.

13. As the condition of the diabetic wound on Mr. Toney's great right toe worsened, and his wife Mrs. Toney called the jail multiple times demanding that Mr. Toney be taken to the hospital for treatment of the wound on his great right toe and the illness he felt in his body therefrom, he was finally transported to the hospital on March 10, 2024.

14. On March 10, 2024, Mr. Toney was transferred from Morgan County Jail to Decatur Morgan Hospital Emergency Department secondary to his wound on his great right toe. While in the emergency department, a CT scan was completed that ruled out

3

osteomyelitis. He was diagnosed with an infected diabetic ulcer on his great right toe that extended to the posterior aspect of his right foot.

15. The hospital discharge orders included (a) cleanse wound with vashe would solution, (b) dress with iodoform packing strips, (c) apply drawtex roll dressing as a second layer, (d) cover with 4x4 gauze and secure with conforming tape twice a day; (e) oral antibiotics, and to have his diabetic ulcer "closely" followed with a Wound Care Specialist for further treatment.

16. Mr. Toney was discharged back to Morgan County Jail.

17. The discharge orders described in paragraph 15 were not followed. Importantly, Mr. Toney was never taken to see a Wound Care Specialist despite his multiple requests to be seen and treated by a Wound Care Specialist.

18. As a result of the Defendants medical negligence and deliberate indifference, on April 9, 2024, Mr. Toney was once again sent to Decatur Morgan Hospital due to his right foot diabetic ulcer. Per the History and Physical medical notes, Mr. Toney's right foot ulcer had progressively worsened over the past three weeks. The ulcer was 3.0 cm in circumference, on the plantar aspect of this right foot, noted with purulent drainage and had malodor. Cultures of the wound grew enterococcus faecalis and pseudomonas.

19. An x-ray of his right foot was completed that showed osteomyelitis of his first metatarsal and proximal phalanx and septic arthritis.

4

20. Per assessment, Mr. Toney's ulcer was on the medical aspect of the head of his first metatarsal. There was noted erosion of the medial portion head, and erosion of the medial base of the proximal phalanx, that was not noted on the previous CT scan that was completed on March 10, 2024.

21. Mr. Toney was admitted to Decatur Morgan Hospital to receive IV antibiotic treatment.

22. On April 9, 2024, Mr. Toney had a general surgery consult related to his infected right great toe and foot. Findings included:

    i. Chronic diabetic ulcer involving right great toe;

    ii. X-ray suggests osteomyelitis of bones beneath this ulcer and findings consistent with septic arthritis;

    iii. Admitted with cellulitis involving right lower leg; and

    iv. Has open wound on medial aspect of his right great toe and base

23. It was at this time that the general surgeon discussed the need for amputation of Mr. Toney's right great toe to clear the infection and get rid of the osteomyelitis.

24. On April 15, 2024, Mr. Toney was discharged and transferred back to Morgan County Jail. Discharge instructions included to continue IV antibiotic therapy outpatient, continue oral antibiotics and to continue wound therapy as an outpatient as well.

25. On April 30, 2024, Mr. Toney was sent to Decatur Morgan Hospital to receive his last dose of IV antibiotic therapy.

26. Mr. Toney states that he requested to go to the hospital concerning the wound on his great right toe multiple times after his hospital visit on March 10, 2024, but his requests were denied multiple times.

27. Mr. Toney states that he requested to be treated by a Wound Care Specialist as the hospital discharge instructions stated multiple times after his March 10, 2024 hospital visit, but his requests were denied.

28. The majority of Mr. Toney's requests were ignored by the Defendants, and the Defendants only transported him to the hospital on March 10, 2024 and April 9, 2024 once Mr. Toney began to have a fever and other overt signs of illness due to his great right toe wound.

29. QCHC, Inc. is vicariously liable for the actions and inactions of Dr. Bates under the doctrine of *respondeat superior*.

## COUNTS

### Count One – Medical Negligence

30. Plaintiff realleges and incorporates by reference every allegation of this Complaint as though fully set forth herein.

31. Defendants were under a duty to exercise reasonable care, diligence, and skill in the treatment of Mr. Toney. Defendants breached the national standard of care in the following ways:

i. Defendants did not properly evaluate Mr. Toney. Despite multiple nurses advising Dr. Bates of Mr. Toney's condition prior to March 10, 2024 and after March 10, 2024, Dr. Bates neglected to treat Mr. Toney which led to the exacerbation of Mr. Toney's condition leading to the amputation of his great right toe and great right toe joint.

ii. Defendants failed to follow the hospital's discharge instructions which included having Mr. Toney treated by a Wound Care Specialist subsequent to his March 10, 2024 hospital visit.

iii. Defendants failed to ensure that Mr. Toney's diabetic wound was cleaned according to the hospital's discharge instructions. Mr. Toney states that his wound was not cleaned twice daily.

iv. Defendants failed to prevent Mr. Toney's wound.

v. Defendants failed to prevent Mr. Toney's infection.

vi. Defendants failed to follow the discharge instructions of the physician from Decatur Morgan Hospital.

32. QCHC, Inc., upon information and belief, was the employer of and/or owned by Dr. Bates at all times relevant. QCHC, Inc. also had a medical provider-patient relationship with Mr. Toney. QCHC, Inc. is vicariously liable for the negligent actions and inactions of Dr. Bates through the legal theory of *respondeat superior.*

33. In a negligence action, a legal duty imposed by statute or regulation may inform the common-law standard of reasonable care or supplant it entirely. See *Lands v. Ward*, --- So. 3d, 2021 WL 2622056 at *3 (Ala. Jun 25, 2021) (MITCHELL, J.) (citing *Parker Bldg. Servs. Co. v. Lightsey ex rel. Lightsey*, 925 So. 2d 927, 930-931 (Ala. 2005)). "A violation of [a safety] statute or ordinance can, therefore, be evidence of negligence under certain circumstances." *Id.* (citing *Murray v. Alabama Power Co.*, 413 So. 2d 1109, 1114 (Ala. 1982)). "The decision of whether a violation occurred, whether such violation was negligence, and whether such negligence was the proximate cause of the injuries complained of will ... be left ... to the jury." *Id.* This is not to be confused with the doctrine of negligence *per se*. See *Lands*, 2021 WL 2622056 at n. 1.

34. The Alabama Board of Medical Examiners has promulgated administrative authority pursuant to its statutory power as the governing body overseeing medical licensure for physician practice in Alabama. Some of the authority that exists centers on the physician-patient relationship. See Ala. Admin. Code. R. 540-X-9-.07. This code section includes minimum requirements necessary to establish and maintain patient trust in the physician. The requirements include, among other things, adequate communication, respect for patient autonomy, compassion for the patient, and that the physician always places the patient's needs above his own personal interests. Ala. Admin. Code. R. 540-X-9-.07.

35. Defendants violated the statute by not providing competent care for Mr. Toney's condition and ignoring the obvious need for Mr. Toney to be treated by a Wound Care Specialist as stated in the March 10, 2024 hospital discharge instructions.

36. Here, like the plaintiff in *Lands*, Plaintiffs rely on a safety standard to make out a *prima facie* case of negligence as opposed to using a statutory violation to conclusively establish, as a matter of law, duty, and breach. *Lands*, 2021 WL 2622056 at n. 1 (citing *Sparks v. Alabama Power Co.*, 679 So. 2d 678, 685 (Ala. 1996) (holding that the case "did not involve the concept of ... negligence *per se* .... Rather, the trial judge simply informed the jury that it was to determine whether [the decedent] violated the statute, whether the violation was negligent behavior under the circumstances of the case, and, if so, whether the violation proximately caused his death.").

37. WHEREFORE, premises considered, the Plaintiff relies on this safety standard to prove negligence, and the Plaintiff further claims damages allowed by the Alabama Medical Liability Act, including punitive damages for wantonness.

### Count Two – Eighth Amendment Deliberate Indifference

38. Plaintiff realleges and incorporates by reference every allegation of this Complaint as though fully set forth herein.

39. QCHC, Inc. and all its employees, agents, and caregivers owed Mr. Toney a duty to follow applicable national standards of care and to not violate his rights under the Eighth Amendment of the United States Constitution. They owed a duty to exercise the reasonable care and skill of similarly situated healthcare providers including a duty to avoid causing an unreasonable risk of injury to Mr. Toney.

40. On March 10, 2024, Mr. Toney was transferred from Morgan County Jail to Decatur Morgan Hospital Emergency Department secondary to his wound on his great right

toe. While in the emergency department, a CT scan was completed that ruled out osteomyelitis. He was diagnosed with an infected diabetic ulcer on his great right toe that extended to the posterior aspect of his right foot.

41. The hospital discharge orders included (a) cleanse wound with vashe would solution, (b) dress with iodoform packing strips, (c) apply drawtex roll dressing as a second layer, (d) cover with 4x4 gauze and secure with conforming tape twice a day; (e) oral antibiotics, and to have his diabetic ulcer "closely" followed with a Wound Care Specialist for further treatment.

42. Defendants did not follow the discharge orders described in paragraph 41 were not followed. Importantly, Mr. Toney was never taken to see a Wound Care Specialist despite his multiple requests to be seen and treated by a Wound Care Specialist subsequent to his March 10, 2024 hospital visit.

43. Upon Mr. Toney's return to the hospital on April 9, 2024, another scan of his right foot was completed that showed osteomyelitis of his first metatarsal and proximal phalanx and septic arthritis. Said osteomyelitis was not present during the scan of Mr. Toney's right foot on March 10, 2024 and is the direct and proximate cause of Defendants' deliberately indifferent treatment of Mr. Toney's condition.

44. Per assessment, Mr. Toney's ulcer was on the medial aspect of the head of his first metatarsal. There was noted erosion of the medial portion head, and erosion of the

medial base of the proximal phalanx, that was not noted on the previous CT scan that was completed on March 10, 2024.

45. QCHC, Inc. is vicariously liable for breach of duties of the standard of care and the deliberately indifferent treatment of Mr. Toney and his diabetic ulcer, pursuant to the doctrine of *respondeat superior*, through the actions and inactions of its employees, agents, or representatives.

46. As a direct and proximate result of these breaches of the standard of care, Mr. Toney's great right toe and great right toe joint were amputated on July 3, 2024.

WHEREFORE, as a direct consequence of the afore mentioned breaches of the standard of care and deliberate indifference to Mr. Toney's obvious medical needs by the Defendants, Mr. Toney suffered lifelong permanent injury limiting his ability to walk, stand, and balance while standing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

i.    That Plaintiff be awarded compensatory damages, including medical expenses, subrogation expenses, lost wages, loss of earning capacity, future economic damages, general noneconomic damages, pain and suffering, and for permanent bodily injury in an amount to be determined by the enlightened conscience of an Alabama jury;

ii.   That Plaintiff be allowed to amend this Complaint in accordance with the Alabama law, Alabama Medical Liability Act, and Federal Rules of Civil Procedure;

11

iii.    That the Plaintiff be awarded punitive damages;

iv.    That Plaintiff have a trial by jury as to all issues; and

v.    That Plaintiff be awarded such other relief as this Court may deem just and

proper.


Respectfully submitted: October 30, 2024


/s/ Ramon Martin
Ramon Martin (ASB-1597-X69W)
The Justice Law Firm, LLC
505 20th Street North
Suite 1220-1157
Birmingham, Alabama 35203
Office: 205.983.2017
Fax: 833.330.3255
Ramon.Martin@LegalJusticeMatters.com
*Attorney for the Plaintiff*